UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ZIPBY USA LLC, TMA GROUP OF
COMPANIES LIMITED, and TMA
CAPITAL AUSTRALIA PTY LTD,

        Plaintiffs,

v.

GREGORY PARZYCH,

        Defendant.

Civ. A. No. 20-cv-10926-DPW

## <u>REPORT AND RECOMMENDATION ON PENDING MOTIONS</u>

TMA Group of Companies Limited and its affiliate, TMA Capital Australia PTY LTD (TMA), Australian companies specializing in mobile parking applications, established ZipBy USA LLC (ZipBy) (collectively the plaintiffs) to gain entry into the North American market, and hired defendant Gregory Parzych to be its president. They subsequently fired Parzych for usurping a corporate opportunity and brought this action. The pleadings assert several claims and counterclaims. Both parties move for partial summary judgment and the matters have been referred to me for a report and recommendation. (D. 183; 185). For the reasons discussed below, I recommend that each motion be allowed in part and denied in part.

I.   **STATEMENT OF FACTS**

   A. **ZipBy and the Hiring of Parzych**

   ZipBy is a parking technology company.  It offers a range of services relating to the financial aspects of parking, sometimes referred to as "parking access revenue control," or PARC, and its products include ticketless parking and a smartphone-based app that allows the customer to pay a facility or municipality for parking without cash or a credit card on hand.  (D. 192, Plaintiffs' Local Rule 56 Statement of Material Facts in Support of Motion for Summary Judgment (Pl. SOF) ¶ 1; D. 188, Statement of Facts in Support of Defendant's, Gregory Parzych, Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure on Counts I Through IX of Plaintiffs' Amended Complaint (Def. SOF) ¶ 6).[1]

   In January 2016, ZipBy hired Parzych as its president, based on his reputation as a pioneer in the parking industry and his success with a company he founded, TCS International (TCS).  (Pl. SOF ¶¶ 8-9).  TCS specializes in parking guidance systems (PGS), which use sensors placed in parking facilities to inform and guide drivers to where parking spaces are available.  (Def. SOF ¶¶ 3-4).  Parzych sold TCS to a Norwegian company, Q-Free International (Q-Free), at some time prior to joining ZipBy.  (Def. SOF ¶ 2).

---

[1] Unless otherwise stated, references to the Record, including exhibits, use the number on the docket rather than the number assigned by the parties.

Parzych's employment was subject to at least two agreements. First, an employment agreement (Employment Agreement) he signed when first hired prohibited him from disclosing proprietary information and required the return of all proprietary materials upon the termination of employment. (Pl. SOF ¶¶ 10, 12). The Employment Agreement also required Parzych to devote his full time to the company and contained a restrictive covenant which provided in pertinent part as follows:

> (a) While Employee is employed by Company and for 18 months after employment terminates (the "Restricted Period"), Employee shall not, directly or indirectly . . . engage in any manner in any activity that is competitive or potentially competitive with the business of Company or any of its affiliates . . . . For the purposes of this [section], the business of Company is defined as the automobile parking industry, including but not limited to automobile parking guidance systems and equipment . . . .

> (b) Employee agrees that, during his employment with Company, he will not undertake any outside activity, whether or not competitive . . . , that could reasonably give rise to a conflict of interest or otherwise interfere with his duties and obligations to Company or any of its affiliates.

> (c) Employee agrees . . . that Employee will not, unless acting with the Company's express written consent, . . . during the term of this Agreement [or] the Restricted Period:

> > (i) directly or indirectly solicit or attempt to solicit, divert or attempt to divert, handle or attempt to handle, service or attempt to service the account or business of any customer of the Company; . . . or

> > (iii) directly or indirectly interfere or attempt to interfere in any way with the Company's

3

> relationships with any person or entity which provides services or products to the Company, including, without limitation, inducing or attempting to induce any such person or entity to terminate or to change the terms of its dealings with the Company.

(*Id.* ¶ 13).  The Employment Agreement also provided that Parzych was an at-will employee who could be terminated for any reason, with or without cause, upon 90 days' written notice.  (Def. SOF ¶ 19).

Second, Parzych in June 2019 signed an Employee Nondisclosure, Inventions, and Intellectual Property Agreement (IP Agreement), which prohibited him from using any confidential information of ZipBy or related companies for the benefit of himself or another entity.  Parzych also agreed to be bound by the terms of any nondisclosure or confidentiality agreements ZipBy reached with third parties.  (Pl. SOF ¶¶ 15-20).

B. **ZipBy's Business Activities**

The parties agree that ZipBy was involved in PARC but dispute the extent to which it was also involved in PGS.  The plaintiffs contend that ZipBy had also been working to develop PGS, and that Parzych was involved with this development and among other things directed ZipBy's development of a PGS for its parking app as part of a proposal prepared for Netflix in California.  (*Id.* ¶ 2). Netflix elected not to use the feature, but ZipBy still maintains and includes the feature in its mobile app.  (*Id.*).  Parzych was

also reportedly involved in the development of a sensor-based prototype for parking guidance, which was eventually completed in late 2019, and was also involved in efforts to secure a third-party sensor to compete with TCS's sensor. (*Id.* ¶¶ 22-23; D. 193, Declaration of Julia L. Mitarotondo in Support of ZipBy's Motion for Summary Judgment (Mitarotondo Dec.) Exh. 4 at 36-73).

Parzych disputes these contentions. He contends that the Netflix proposal was merely for a specific company to have specific employees be able to reserve a spot in a company parking area. (D. 212-1, Defendant's Response to Plaintiffs' Statement of Material Facts (Def. RSOF) ¶¶ 4-6; D. 206, Declaration (Fifth) of Gregory Parzych in Support of Opposition to Summary Judgment (Parzych 5th Dec.) ¶ 8). With respect to efforts to secure a third-party sensor, he contends he simply conveyed information he had come across from a former colleague, and ZipBy in any event was not providing PGS to any customers. (Def. RSOF ¶ 6; Parzych 5th Dec. ¶ 9; Def. SOF ¶ 85, 88, 90).

### C. <u>The Plaintiffs' Pursuit of TCS</u>

Regardless, ZipBy became interested in acquiring TCS in early 2020, when Parzych learned that Q-Free was considering selling it and informed TMA's CEO, Anthony Karam, of the opportunity. (Def. SOF ¶¶ 36-37). Karam termed the opportunity a "wow" and asked Parzych alone to perform due diligence to evaluate the opportunity, even though Karam himself had directly communicated with Morten

5

Andersson, the head of Q-Free, and Jimi Meshulam, Q-Free's CFO, a month earlier to discuss a distributorship agreement with TCS, and had about 1,000 employees at his disposal, including personnel in Australia who worked with TCS on a regular basis.  (Pl. SOF ¶ 24; Def. SOF ¶¶ 38-39; D. 212-2 to 212-6).  Karam considered Parzych the best person to perform the due diligence because Parzych had created and sold TCS, knew its business and customer base, and had maintained a long friendship with David Radford, the Executive Vice President of TCS's Parking Unit.  (Pl. SOF ¶ 24).

Parzych initially reported that he had a positive impression of TCS and he noted to Karam that "[w]e really could make ZipBy/TCS into a tremendous organization with a **very** unique product portfolio." (Mitarotondo Dec. Exh. 3 at 84-85) (emphasis in original).  Based on Parzych's representations that he knew the parking sensor market "**COLD**", Karam told Parzych to conduct further due diligence by, among other things, soliciting overview documents from Q-Free.  (*Id.* (emphasis and capitalization in original); Pl. SOF ¶ 25; D. 189-17, Deposition of Gregory Parzych (Parzych Depo. Def. Excerpts) 156).[2]

In that vein, Q-Free sent Parzych "a lot of information about TCS, Inc.," even though ZipBy and Q-Free did not yet have a nondisclosure agreement in place.  (D. 193-1, Deposition of Morten

---

[2] Because these deposition excerpts display four deposition pages on a single page on the docket, references are to the original deposition page number.

Andersson (Andersson) 99).[3]   On January 21, 2020, Parzych sent
Karam an email which read: "See the updated financials with order
backlog.  It is an aggressive pipeline based on the fact that much
of their product line is now antequated (sic).  Let's discuss."
(Pl. SOF ¶ 26).  The parties agree that Karam and Parzych then
discussed the import of Parzych's email but dispute the substance
of the discussion.

    According to the plaintiffs, Parzych told Karam that TCS had
not done development in five years, that its sales projections
could not be realized without redesigning the sensor technology
and related software and hardware, and that TCS was in worse shape
than Parzych initially thought.  (*Id.*).  When asked ultimately for
his recommendation, Parzych recommended that ZipBy not proceed any
further in acquiring TCS.  (*Id.* ¶ 27).

    Parzych by contrast denies that he ever told Karam not to
purchase TCS, and notes as support that he contemporaneously told
Karam in an email dated January 23, 2020, that Q-Free was waiting
to see if ZipBy was still interested in acquiring TCS because it
otherwise wanted to move on to another prospective buyer.  (Def.
SOF ¶ 50; D. 189, Declaration of Michelle J. Blair in Support of
First Motion for Summary Judgment (Blair Dec.) Exh. 10).  According
to Parzych, Karam had the same concerns about TCS's financial

---

[3] Because this deposition excerpt is not paginated on the docket, page
references are to the original deposition page numbers.

information as Parzych did, and he (Karam) thought that TCS
understated its marketing expenses and was worth nothing.  (Def.
SOF ¶¶ 52-53; 64).

Karam acknowledges that he thought TCS's reported marketing
expenses seemed too low but contends that this concern did not
extend to the overall numbers TCS provided, and he denies telling
Parzych or anyone else that ZipBy was worth nothing.  (D. 189-14,
Deposition of Anthony Karam (Karam Depo. Def. Excerpts) at 8; D.
209-2, Plaintiffs' Response to Statement of Facts (Pl. RSOF) ¶
53).

### D. **The Decision to Forgo Acquiring TCS and its Aftermath**

According to the minutes from a TMA board meeting held
approximately a week later, on January 31, 2020, Karam told the
board that Parzych did not recommend buying TCS, and the board
subsequently voted to forgo the purchase.  (Pl. SOF ¶ 28).

Subsequently, on or about February 14, 2020, Q-Free,
apparently unaware of TMA's decision, sent Parzych as ZipBy's
president a proposed nondisclosure agreement between Q-Free and
ZipBy.  (Mitarotondo Dec. Exh. 2 at 164-70).

Parzych executed and returned the agreement to Morton
Andersson and Jimi Meshulam on or about February 21, 2020 but
edited the agreement in at least two notable ways.  First, Parzych
signed it as president of an entity called MJP Global Technologies
(MJP Global), a "shell" company he had created for marketing

purposes after selling TCS.  Second, Parzych added two other entities who also were to receive access to Q-Free's information to help him conduct his assessment, including Jennifer Prokowiew on behalf of B. Clark Taylor, CPA, and David McCabe on behalf of Main Street Bank.  Prokowiew was an accountant who had previously performed some work for Parzych at ZipBy, and McCabe was Parzych's personal banker.  (Pl. SOF ¶ 32).  Parzych emailed the nondisclosure agreement back to Q-Free using an MJP Global email account rather than his ZipBy email account.  (Mitarotondo Dec. Exh. 2 at 227-33; Def. SOF ¶ 22).

In or around March 2020, Parzych telephoned Andersson and offered $800,000 for TCS.  Andersson, still unaware of TMA's decision in late January to forgo acquiring TCS, assumed Parzych was extending the offer on behalf of ZipBy.  (Andersson 50-51-52). Andersson responded with a counteroffer of $1 million and Meshulam continued thereafter to speak with Parzych about a purchase agreement.  (*Id.* 51).  Andersson was not aware that Parzych might be trying to purchase TCS for himself until Meshulam mentioned, possibly in March 2020, that emails from Parzych were no longer coming from his ZipBy account.  (*Id.* 52).

Parzych does not deny that he surreptitiously attempted to purchase TCS or that Karam most likely would have fired him had he known of his efforts.  (Pl. SOF ¶ 38).

### E. **ZipBy's Discovery of Parzych's Effort to Buy TCS**

ZipBy learned of Parzych's efforts in or around mid-March 2020 when it became aware of an email Parzych had sent to someone from his ZipBy account. The email was dated March 12, 2020, and read, "FYI I am buying back TCS. CONFIDENTIAL. A really good story." (Pl. SOF ¶ 31). Parzych also exchanged emails with Dave McCabe and Jennifer Prokowiew, the other signatories to the nondisclosure agreement with Q-Free, giving a highly positive review of TCS as "[p]rofitable and debt free." (*Id.* ¶¶ 32-33). Upon learning of Parzych's efforts, ZipBy initiated an investigation to determine whether Parzych had also potentially acted improperly in other ways. (D. 193-1, Deposition of Anthony Karam (Karam Depo. Pl. Excerpts) 91, 93).[4] That investigation led to three discoveries of note.

First, ZipBy discovered that Parzych had communicated with a German ticketing company named Fleischhauer Datenträger GmbH (Fleischhauer) in November 2019 about marketing traditional paper parking and mass transit tickets in the United States. (Pl. SOF ¶¶ 41-43; Mitarotondo Exh. 3 at 46-79). During these discussions Parzych requested a flat fee of $17,500 per month to work with Fleischhauer, and he also reached out to an executive of the Toledo Ticket Company to discuss a potential role for that person in the

---

[4] Because this deposition excerpt is not paginated on the docket, page references are to the original deposition page numbers.

enterprise.   (Mitaraotondo Exh. 2 at 61, 97; Parzych Depo. Def. Excerpts 132-35).   It is unclear whether this potential venture was to occur during or after Parzych's employment with ZipBy.

Second, ZipBy learned that Parzych had entered into a purchase and sale agreement for 22 Union Avenue in Sudbury, the building in which ZipBy leased Parzych's office space, in April 2019, without ZipBy's knowledge.   (Pl. SOF ¶ 45).   Further, Parzych signed a three-year lease extension in September 2019, without ZipBy's approval, and against its wishes to have a month-to-month tenancy. (*Id.* ¶¶ 45-46; Mitarotondo Dec. Exh. 2 at 95).   Further still, and in possible anticipation of his eventual purchase of the building, Parzych raised the monthly rent from $995 to $1100 the first year, $1150 the second year, and $1200 the third year, and had ZipBy agree to pay 10 percent of the real estate taxes.   (D. 6-28; Mitarotondo Dec. Exh. 2 at 95).   Parzych admits that he did not consummate the purchase of the building until on or around April 30, 2020, but believed he had the authority to sign the lease extension as president of ZipBy.   (Pl. SOF ¶ 47; Def. RSOF ¶¶ 29, 49).

Finally, ZipBy discovered that Parzych had maintained a website for MJP Global while employed at ZipBy.   Parzych displayed ZipBy registered trademarks on sections of the website and also featured seven photographs of ZipBy-branded parking equipment on a page entitled, "Parking and Transportation Expertise for the

11

Future."   ZipBy did not authorize Parzych to use its marks or photographs and nowhere did the MJP Global website indicate that ZipBy and MJP Global were separate entities.   The website listed Parzych as MJP Global's CEO and president.   (Def. SOF ¶ 22).

**F. <u>Parzych's Termination</u>**

Parzych was subsequently terminated on April 13, 2020, following ZipBy's investigation.   (Pl. SOF ¶ 50; Def. SOF ¶ 76). ZipBy did not give Parzych advance notice of the termination but did pay him 90 additional days' worth of salary.   (Pl. SOF ¶ 57). Also, while Parzych had used all his available vacation time at the time of his dismissal, ZipBy paid him for time he would have accrued had he worked an additional 90 days.   (*Id.*).

The parties agree that Parzych exited his office after being terminated but offer different versions as to what occurred during the termination and in the following days.   According to the plaintiffs, a security professional named Michael Cauley served Parzych with termination papers and gave Parzych all documents readily available that clearly were Parzych's.   (Pl. SOF ¶¶ 50, 51).   Parzych returned later in the day and Cauley filled several laundry baskets with Parzych's personal items and files, and told Parzych that any additional personal property would be returned to him within a reasonable time.   (*Id.* ¶ 51).   Parzych was also informed that he could no longer enter the ZipBy office and had to relinquish possession of any ZipBy property, including

12

intellectual property and proprietary information.  (*Id.* ¶ 52).
Parzych was also told to return all laptops and phones without
erasing any data, and in fact did return those items when
confronted by Cauley, but Parzych's wife wiped data from the phone
remotely, apparently after its return.  (*Id.* ¶ 53; Deposition of
Gregory Parzych (Parzych Depo. Pl. Excerpts) 87, 90).[5]

ZipBy also installed a security camera system to monitor the
office.  (Pl. SOF ¶ 50).  On April 15, 2020, the surveillance
camera captured Parzych in the office without permission.  Parzych
also repositioned a security camera on that day, but not before
the camera recorded him with what appeared to be a folded-over
stack of several sheets of paper in the back pocket of his pants.
(*Id.* ¶ 55).  The cameras also captured two other instances of
unauthorized access by unidentified persons (assumed to be
Parzych) on other days.  (*Id.* ¶¶ 54-56).

According to Parzych, he relinquished his cell phone and
laptop upon Cauley's request even though they still contained some
personal information on them.  (Def. SOF ¶ 76).  Further, when he
returned later that day (April 13), he was given only a small bag
with a few personal items rather than baskets of material.  (*Id.*
¶ 77).  He contends that ZipBy retained possession of various
personal documents, including a warranty deed for personal real

---

[5] Because this deposition excerpt is not paginated on the docket, page
references are to the original deposition page numbers.

estate, tax documents, a passport and birth certificates, and dissolution of marriage documents. (Def. RSOF ¶ 47).

Parzych acknowledges that he returned to the ZipBy office on April 14 and 15, 2020. He also acknowledges that he disconnected the security camera, because he felt as though he was being "tracked." (Parzych Depo. Pl. Excerpts 97). He also acknowledges that, although he had entered into a purchase and sale agreement for 22 Union Avenue in 2019, he did not yet own the building by April 15, 2020. (*Id.* 91). Parzych contends, though, that he entered the office only to remove his other personal belongings, particularly personal financial information, and did not take any property of ZipBy. (Def. SOF ¶ 78; Parzych Depo. Pl. Excerpts 93-94, 96).

## II.  **THE COMPLAINT**

The parties assert 16 claims and counterclaims between them. The plaintiffs assert nine claims for: breach of fiduciary duty (Count I); breach of contract (Count II); misappropriation of trade secrets under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 (Count III); misappropriation of trade secrets under M.G.L. ch. 93A, § 42 (Count IV); trademark infringement under the Lanham Act (Count V); false designation, description, and representation under the Lanham Act (Count VI); common law trademark infringement (Count VII); trespass (Count VIII); and conversion (Count IX).

The defendant asserts seven counterclaims for: tortious interference with advantageous business relations (Count I); breach of the Employment Agreement (Count II); wrongful termination (Count III); conversion (Count IV); and violation of privacy under M.G.L. c. 214 § 1B (Count VI). He also seeks a declaratory judgment that ZipBy does not provide parking guidance systems (Count V) and that ZipBy wrongfully obtained the preliminary injunction[6] (Count VII).

The plaintiffs move for summary judgment on Counts I, II and VIII of their complaint while the defendant moves for summary judgment on all nine counts. The plaintiffs also move for summary judgment on all the defendant's counterclaims.

## III. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment as to any claim or part of a claim. Fed. R. Civ. P. 56(a). The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Johnson v. Gordon*, 409 F.3d 12, 16–17 (1st Cir. 2005) (quoting *Garside v. Osco Drug*, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show "that there is no genuine issue as to any material fact and that

---

[6] The plaintiffs previously obtained a preliminary injunction preventing Parzych or any of his "agents, servants, employees, and attorneys, [and] all persons in active concert with them" from pursuing in any way the purchase of TCS. (D. 54). The injunction has remained in effect even though the contractual non-compete clause expired in October 2021.

the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. *Johnson*, 409 F.3d at 17. Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Id.*

The fact that the parties have filed competing cross-motions with respect to some counts "'do[es] not alter the basic [Rule 56] standard, but rather simply require[s] [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'" *Alasaad v. Mayorkas*, 988 F.3d

8, 16 (1st Cir. 2021) (bracketing added) (quoting *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001)).

But "when facts, though undisputed, are capable of supporting conflicting yet plausible inferences—inferences that are capable of leading a rational factfinder to different outcomes in a litigated matter depending on which of them the factfinder draws—then the choice between those inferences is not for the court on summary judgment." *In re Varrasso*, 37 F.3d 760, 764 (1st Cir. 1994) (citing *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir. 1994) (stating that "all choices between available inferences are matters to be left for a jury, not matters to be decided by the court on summary judgment")).

IV.  **DISCUSSION**

    A. **The Plaintiffs' Claims**

    1. Count I – Breach of Fiduciary Duty

Count I alleges that Parzych breached his fiduciary duty to ZipBy by usurping corporate opportunities for his personal benefit, engaging in self-dealing without ZipBy's knowledge or approval, and otherwise failing to discharge his duties in good faith and in ZipBy's best interests.  In particular, the plaintiffs allege that Parzych breached a duty by (i) pursuing TCS, (ii) working with Fleischhauer and the Toledo Ticket Company to develop a parking ticket-related business, and (iii) purchasing 22 Union Avenue and extending the lease for three years.  Both parties move

for summary judgment on Count I.  As discussed below, summary judgment is not appropriate because there are disputed material facts bearing on whether Parzych's conduct fell short of satisfying his fiduciary duty, and/or facts which, while not in dispute, could support conflicting yet plausible inferences.

a. *Parzych's Conduct Regarding the TCS Opportunity*

The plaintiffs allege that Parzych usurped TMA's opportunity to purchase TCS by disingenuously persuading TMA to pass on the opportunity so he could buy it for himself.  Under Massachusetts law, a plaintiff claiming breach of fiduciary duty must show (1) the existence of a fiduciary duty; (2) breach of that duty; (3) damages; and (4) a causal connection between the breach of duty and the damages.  *Baker v. Wilmer Cutler Pickering Hale & Dorr LLP*, 91 Mass. App. Ct. 835, 842 (2017).  As ZipBy's president, Parzych owed ZipBy a fiduciary duty requiring him to perform his obligations "in good faith; (2) with the care that a person in a like position would reasonably exercise under similar circumstances; and (3) in a manner the officer reasonably believes to be in the best interests of the corporation."  M.G.L. c. 156D, § 8.42.

The corporate opportunity doctrine is rooted within the notion of fiduciary duty and provides that a person owing a fiduciary duty to a corporation is prohibited from taking an opportunity or advantage belonging to the corporation for his or

her personal benefit.  *Demoulas v. Demoulas Super Mkts., Inc.*, 424 Mass. 501, 529 (1997).  This prohibition is not absolute, however; a fiduciary is not barred from pursuing an opportunity if the corporation has knowledge of the opportunity and has declined to pursue it.  *Id.* at 530.  In this regard, the corporate opportunity doctrine is best seen as a rule of disclosure obligating the fiduciary to disclose all material facts to the corporation so that the corporation can make an informed decision on the opportunity.  *In re Cumberland Farms, Inc.*, 284 F.3d 216, 228 (1st Cir. 2002).

There is no real dispute that Parzych pursued TCS on his own behalf only after TMA decided to forgo acquiring it.  There is a dispute, however, as to whether Parzych actively and disingenuously discouraged TMA from pursuing TCS in order to usurp the opportunity for himself.  The plaintiffs have adduced evidence through TMA board minutes and the testimony of Karam and Morten Andersson from Q-Free that Parzych (i) unequivocally recommended that TMA not buy TCS based on information calling its worth and potential profitability into question; (ii) thereafter sent emails to his own banker and accountant that presented a more positive spin than he did to Karam; and then (iii) offered Andersson $800,000 for TCS.  (Pl. SOF ¶¶ 27-28; 32-33; Andersson 50-51-52). A factfinder crediting this evidence and the timing of the events could reasonably conclude that Parzych saw TCS as a viable

19

corporate opportunity but purposely recommended that Karam not buy it so that he could purchase it for himself, in violation of his fiduciary duty.  *See, e.g., Nat'l Credit Union Admin. Bd. v. Regine*, 749 F. Supp. 401, 414 (D.R.I. 1990) (duty of good faith is violated when officer fails to disclose material facts, misrepresents key information, or takes advantage of corporate opportunity for personal gain).

However, Parzych has adduced evidence, principally through his own testimony, that he presented Karam and TMA with valid information about TCS's performance and prospects, did not tell Karam to forgo buying TCS, and pursued TCS on his own only after TMA decided not to.  Parzych notes further that Karam had the same financial information Parzych did and expressed doubts about those finances.  (Parzych Depo. Def. Excerpts 69).  Further, although Parzych admittedly pursued TCS surreptitiously, he contends it was only because he assumed Karam would be upset and fire him if he knew.  Parzych notes in that regard that he did not conceal in the nondisclosure agreement with Q-Free that he was acting on his own behalf rather than on ZipBy's behalf.  A factfinder crediting the foregoing could find that Parzych did not usurp TMA's opportunity to purchase TCS and acted only after TMA decided not to buy it based on shared and authentic information.

Ultimately, whether Parzych usurped a corporate opportunity may turn on the credibility of Parzych and Karam and other

witnesses.  As credibility is clearly an issue for a jury rather than the court, summary judgment is not appropriate on this portion of Count I.  *See Rogers v. Cofield*, Civ. A. No. 08-10684-MBB, 2011 WL 6140974, at *17 (D. Mass. Dec. 8, 2011) (citing *Holt v. Deere & Co.*, 24 F.3d 1289, 1295 (10th Cir. 1995) (jurors are sole judges of a witness's credibility and are entitled to accept or reject a witness's testimony in whole or in part).

### b. *Parzych's Dealings With Fleischhauer*

The plaintiffs contend that Parzych breached a fiduciary duty by attempting to arrange a distribution deal with Fleischhauer for his own benefit.  They contend this was improper because Fleischhauer and Toledo Ticket are directly competitive with TMA where TMA has a ticketing business, and Parzych's dealings went beyond preliminary discussions to include his submission to Fleischhauer of an actual business plan.  If credited, a factfinder could conclude that Parzych breached a duty to ZipBy by seeking to do business with a competitor.  *Cf. Triton Constr. Co. v. E. Shore Elec. Servs., Inc.*, Civ. A. No. 3290-VCP, 2009 WL 1387115, at *15 (Del Ch. May 18, 2009) (bid estimator breached fiduciary duty to employer by performing same services for direct competitor).

Parzych counters that Fleischhauer and ZipBy are not competitors because Fleischhauer is a ticketing company and ZipBy is not involved in ticketing.  He argues further that he only had limited discussions with Fleischhauer executives and never

received a contractual or employment offer from them.  He also contends that he merely reached out to a friend at Toledo Ticket on a personal basis to see whether he would have any interest in the venture.  A factfinder crediting this evidence could conclude that Parzych did not breach any duty because he did no more than engage in preliminary discussions with an entity that was not a ZipBy competitor.

Given that there are disputed facts bearing on whether Fleischhauer was a ZipBy competitor, and whether Parzych had insubstantial or substantial dealings with them, summary judgment is not appropriate on this claim.

### c. *Parzych's Conduct Regarding 22 Union Avenue*

ZipBy contends that Parzych engaged in self-dealing when he entered into a purchase and sale agreement for the building at 22 Union Avenue and then committed ZipBy to a three-year lease.  ZipBy contends that it typically purchases the buildings in which it operates and Parzych's actions denied them that opportunity. Further, Karam had informed Parzych that all legal contracts needed the approval of TMA's general counsel before execution, but Parzych did not seek approval in signing a lease extension.  (Pl. SOF ¶¶ 45-46).  Further, while the initial lease of Parzych's ZipBy office from mid-December 2015 to mid-December 2018 was at a flat $995 per month (D. 6-28), the three-year lease negotiated by Parzych called for increased monthly rents each year of $1100, $1150, and $1200,

respectively, and also called for ZipBy to pay 10 percent of the real estate taxes.  (Mitarotondo Dec. Exh. 2 at 95).

Parzych counters that his purchase was nothing more than a personal real estate opportunity for a property that was close to his residence and convenient for his ZipBy office.  He contends that ZipBy had never before purchased office property in the United States (Karam Depo. Pl. Excerpts 118) so he had no reason to think that ZipBy might want to purchase 22 Union Avenue.  Parzych also believed as ZipBy's president that he had the authority to extend the office lease, particularly where the space was essentially for his exclusive use.

A reasonable factfinder crediting ZipBy's assertions could find that Parzych breached his duties by engaging in a self-dealing transaction.  Conversely, a factfinder crediting Parzych could conclude that he did not breach a duty or improperly engage in self-dealing where ZipBy did not typically purchase property in the United States, he was the only person occupying the space, and the rent raises appeared to be modest.  As resolution of this claim may turn on witness credibility and extrinsic evidence regarding the reasonableness of the lease, summary judgment is not appropriate.

In sum, neither party is entitled to summary judgment on Count I.

2. <u>Count II — Breach of Contract</u>

Although framed as a single claim, Count II alleges that Parzych breached the parties' Employment Agreement and IP Agreement in four ways.  First, Parzych breached two restrictive covenants in Section 11 of the Employment Agreement by pursuing TCS and exploring a business opportunity with Fleischhauer. Second, Parzych breached Section 10(c) of the Employment Agreement, and Sections 2 and 5 of the IP Agreement, by accessing and using proprietary information without authorization.  Third, Parzych breached Section 10(d) of the Employment Agreement and Section 3 of the IP Agreement when during his termination he removed materials from the ZipBy office, wiped information from his phone, and failed to sign a certificate of compliance with his termination obligations.  Finally, Parzych breached Section 2 of the Employment Agreement and Section 1 of the IP Agreement by failing to perform his duties faithfully and exclusively for ZipBy. Both parties move for summary judgment on Count II.  As discussed below, the plaintiffs should be granted summary judgment on their claim that Parzych breached Section 11 of the Employment Agreement by pursuing TCS, but the motions should otherwise be denied.

a. *Breach of Section 11 of the Employment Agreement*

Under Section 11(a) of the Employment Agreement, Parzych, during his employment and for 18 months thereafter, was not permitted to "engage in any manner in any activity that is

competitive or potentially competitive with the business of [ZipBy] or any of its affiliates . . . , including "automobile *parking guidance systems* and equipment." (Pl. SOF ¶ 13) (emphasis added). As such, the Employment Agreement explicitly defined "automobile parking guidance systems" to be an activity competitive with ZipBy, which meant Parzych could not engage in any activity with them. Where there is no dispute that Parzych signed the Employment Agreement, that TCS was involved in PGS, and that Parzych subsequently pursued TCS while employed by ZipBy and indeed offered to buy it for $800,000, it follows that his pursuit of TCS breached the Employment Agreement. This would be true even if the Employment Agreement did not explicitly refer to automobile parking guidance systems, because the undisputed record shows that ZipBy had explored parking guidance technology, and that Parzych knew of its efforts and participated at least to some degree in them.

To be sure, Parzych argues that ZipBy has never sold a parking guidance system, and that its only marketed technology is far different from the sensor-based systems TCS was using. However, the Employment Agreement's noncompete clause covered potential business as well as actual business. By developing a sensor-based prototype for parking guidance and exploring sensors that would compete with TCS, ZipBy was preparing for potential parking guidance business. Further, as the presiding court remarked during

prior proceedings in the case, competition need not be direct and can encompass horizontal as well as vertical growth. (D. 34, Transcript of Videoconference Motion Hearing, at 5-6, 27). Accordingly, the plaintiffs should be granted summary judgment on this portion of Count II.

However, as to the allegation that Parzych's conduct with Fleischhauer likewise violated Section 11(a), reasonable factfinders could, as discussed above, draw competing inferences as to whether Fleischhauer is a competitor with ZipBy, and Section 10(a) does not list parking ticket companies as competitors.

Further, although Section 11(b) of the Employment Agreement barred Parzych during his employment from engaging in any outside activity that could reasonably give rise to a conflict of interest or otherwise interfere with his duties and obligations to ZipBy (Pl. SOF ¶ 13), the record is unclear as to whether Parzych intended to work with Fleischhauer while still employed by ZipBy, or if such work would constitute a conflict of interest, or if it would interfere with any obligations Parzych had to ZipBy.

Summary judgment should therefore be denied with respect to the claim that Parzych's activity with Fleischhauer violated the noncompete provisions of the Employment Agreement.

b. _Breach of Section 10(c) of the Employment Agreement and Sections 2 and 5 of the IP Agreement_

Section 10(c) of the Employment Agreement and Section 2 of the IP Agreement both provide that Parzych could not disclose or use for his personal benefit any confidential information of the company without ZipBy's express consent.  Section 10(c) extends this prohibition to information furnished by a third party to ZipBy in confidence, and Section 5 of the IP Agreement binds employees to the terms of any nondisclosure agreements ZipBy reaches with third parties.  (Pl. SOF ¶¶ 12, 17, 19).

The plaintiffs contend that Parzych breached these provisions by using information provided by Q-Free to further his own efforts to buy TCS.  However, the record is muddled on what information Q-Free provided to Parzych and when it was provided.  The record reflects that Q-Free provided Parzych and ZipBy information in January 2020 but does not indicate what that information entailed or what exactly Parzych did with it.  Further, this information was provided before Q-Free submitted a nondisclosure agreement to ZipBy so it would not have been subject to Section 5 of the IP Agreement.  Further still, the record is silent as to what information if any Q-Free provided after Parzych signed the nondisclosure agreement, and Parzych in any event signed the nondisclosure agreement on behalf of MJP Global rather than ZipBy.

As such, the record does not clearly establish either way whether Parzych breached any of these provisions.

      c. *Breach of Section 10(d) of the Employment Agreement and Section 3 of the IP Agreement*

Section 10(d) of the Employment Agreement obligates an employee, upon termination, to deliver all documents and materials of a proprietary nature to the company and to execute a certificate certifying compliance.  (Pl. SOF ¶ 12).  Section 3 of the IP Agreement is more of a notice provision and provides that all tangible materials that relate or pertain to ZipBy's business, whether furnished to or prepared by the employee, are the sole and exclusive property of ZipBy.  (Id. ¶ 18).  The plaintiffs contend that Parzych breached Section 10(d) by failing to return all company property or to execute a certificate of compliance.

However, while it is undisputed that Parzych refused to sign a certificate of compliance indicating that he relinquished all proprietary information when he was terminated, and deleted some data from the phone he returned, there is a dispute as to whether he retained any proprietary documents or materials and whether the data that was deleted from the phone was personal in nature.  In this regard, the plaintiffs have not pointed to any specific information they claim Parzych retained or deleted.  Hence, summary judgment is not warranted on this claim.

### d. _Breach of Section 2 of the Employment Agreement and Section 1 of the IP Agreement_

Section 2 of the Employment Agreement provides that an employee shall work exclusively for ZipBy and take no action prejudicial to the company, and Section 1 of the IP Agreement provides that an employee is expected to devote his skills and energies to promote the best interests of ZipBy.  (_Id._ ¶¶ 11, 16).  The plaintiffs contend that Parzych breached his general duties as outlined in these provisions by failing to perform exclusively for ZipBy and to promote the company's best interests.  As discussed above, however, there are disputes of fact bearing on the extent to which Parzych's various activities ran counter to ZipBy's interests.  Summary judgment is thus not warranted on this specific claim.

In sum, the plaintiffs should be granted summary judgment on Count II to the extent that Parzych breached the noncompete clause in pursuing TCS.  The parties' respective motions on Count II should otherwise be denied.

### 3. Count III — Violation of the Defend Trade Secrets Act

The defendant moves for summary judgment on Count III, which alleges that he misappropriated trade secrets under the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836.  The DTSA provides that a trade secret owner may bring a cause of action for misappropriation provided that the owner has (1) taken reasonable

measures to keep such information secret and (2) the information derives independent economic value from being not generally known to and readily ascertainable by another person who can also obtain economic value from disclosure or use. *See* 18 U.S.C. §§ 1836(b)(1) and 1839(3). Misappropriation is defined as "the disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." *Id.* § 1839(5)(B); *see also Allscripts Healthcare, LLC v. DR/Decision Res., LLC*, 386 F. Supp. 3d 89, 94-95 (D. Mass. 2019). "'A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'" *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 357 Mass. 728, 736 (1970) (quoting Restatement of Torts § 757 cmt. b).

The plaintiffs contend that Parzych violated the DTSA in two ways. First, he used the TMA board's decision not to purchase TCS for his own benefit, namely to purchase TCS for himself. Second, he made use of information that Q-Free provided to ZipBy for ZipBy's use in evaluating TCS. In the court's view, the defendant is entitled to summary judgment on this claim.

First, even if the plaintiffs took steps to secure the TMA board minutes memorializing the decision to forgo acquiring TCS, and the decision was not generally known or readily ascertainable by others, the plaintiffs have not cited to any authority suggesting that a company's decision whether to acquire an asset could ever constitute a "trade secret" under the DTSA. Regardless, the plaintiffs fail to show how the plaintiffs' decision had any independent economic value for ZipBy.

Regarding the information Q-Free supplied to ZipBy, the record fails to establish that the information amounted to trade secrets under the DTSA. As an initial matter, the record is unclear as to what information Q-Free transmitted, and how much if any was provided after Q-Free provided ZipBy with a nondisclosure agreement, which Parzych notably signed on behalf of MJP Global rather than ZipBy. But even assuming at least some of the information Q-Free provided fell under a nondisclosure agreement between ZipBy and Q-Free and was thus subject to ZipBy's IP policy, there is no evidence that the information had any independent economic value to ZipBy. ZipBy could not use or sell the information, for example, without itself running afoul of the nondisclosure agreement and the IP policy.

Summary judgment should therefore be entered in the defendant's favor on Count III.

4. <u>Count IV — Misappropriation of Trade Secrets Under the Massachusetts Uniform Trade Secrets Act</u>

Count IV, on which only the defendant moves for summary judgment, alleges that Parzych misappropriated trade secrets in violation of the Massachusetts Uniform Trade Secrets Act, M.G.L. ch. 93, § 42.  The standard for misappropriation of a trade secret under Massachusetts law is "substantially similar" to that under the DTSA.  *Viken Detection Corp. v. Videray*, 384 F. Supp. 3d 168-77 (D. Mass. 2019).  A trade secret under the statute is defined "as any confidential information used in the plaintiff's business that 'gives [the owner] an advantage over competitors who do not know or use it.'"  *Id.* (quoting *Optos, Inc. v. Topcon Med. Sys.*, 777 F. Supp. 2d 217, 238 (D. Mass. 2011)).  Where the court has concluded that the defendant is entitled to summary judgment on the DTSA claim, it follows that he is entitled to summary judgment on the state analog claim for the same reasons.

5. <u>Counts V, VI, and VII — Trademark Infringement</u>

Counts V, VI and VII arise from Parzych's use of ZipBy's trademarks and photographs of ZipBy products on his MJP Global website and allege federal and common law trademark infringement (Counts V and VI)[7] as well as federal infringement of unregistered

---

[7] Under 15 U.S.C. § 1114, the Lanham Act prohibits the unauthorized use of a mark similar enough to a federally registered trademark to likely to cause confusion as to the source of goods or services.  Claims of common law trademark infringement under Massachusetts law require the same elements as those required under the Lanham Act.  *Bose Corp. v. Ejaz*, 732 F. 3d 17, 26 n.7 (1st Cir. 2013).

trademarks/unfair competition (Count VII).[8]   Only the defendant
moves for summary judgment on these claims.

There is no dispute that Parzych used ZipBy's federally
protected trademarks and photographs referencing ZipBy's trade on
his personal website, MJP Global, without permission, and
resolution of the three claims centers on whether the defendant's
infringement could cause confusion among its customers.   In moving
for summary judgment, the defendant does not directly address
whether the items were likely to cause confusion among ZipBy's
customers, but contends that he used the trademarks to promote
ZipBy while he worked there and did not use them to further any
personal business.

Generally, the likelihood of confusion is a factual issue,
and the First Circuit has recognized that in trademark cases,
"[s]ummary judgment is appropriate only where no reasonable trier
of fact could conclude conclusion is likely." *Dorpan, S.L. v.
Hotel Melia, Inc.*, 728 F.3d 55, 64 (1st Cir. 2013) (citing *Sports
Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir.
1996)).   In evaluating likelihood of confusion, courts of this
circuit examine similarity of the marks; similarity of the goods;
relationship between the parties' channels of trade; relationship

---

[8] Under 15 U.S.C. § 1125(a), the unauthorized use of trade names is prohibited
when that use is likely to cause confusion or deception among purchasers
regarding the origin of goods or services.

between the parties' advertising; classes of prospective purchasers; evidence of actual confusion; defendant's intent in adopting its mark; and strength of the plaintiff's mark. *Id.* at 65 (citing *Pignons S.A. de Mocanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981)).

Here, where the record reflects that Parzych used ZipBy's trademarks and trade name on his personal website, and was well known and experienced in the parking industry, a factfinder could reasonably conclude that his website was likely to have been accessible to the same clientele ZipBy sought to serve, and thus could sow confusion among ZipBy's clients.  The defendant's motion should therefore be denied with respect to Counts V, VI, and VII.

6. Count VIII — Trespass

Count VIII alleges that Parzych trespassed when he twice returned to ZipBy's office after being terminated.   Under Massachusetts law, a claim of trespass requires the plaintiff to show that they had actual possession of the property at issue and that the defendant committed an intentional and illegal entry. *Fed. Ins. Co. v. Bos. Water & Sewer Comm'n*, 583 F. Supp. 2d 225, 229 (D. Mass. 2008).  Actual possession is based on mere possession rather than any specific title or right to the property.  *McCarthy v. Verizon New England, Inc.*, 731 F. Supp. 2d 123, 133 (D. Mass. 2010).  A leasehold may qualify as actual possession. *See id.*; *Warner v. Abbey*, 112 Mass. 355 (1873) (lessor has no right to

disturb lessee in his or her possession, and lessee may maintain action for trespass).

Both parties move for summary judgment on this claim.  Parzych does not deny entering the office after being terminated but claims that he only entered to retrieve some personal items, and the entries occurred before he received a "No Trespass" order.  He argues further that he was the sole occupant of the office and had used it for both business and personal reasons since 2016.  He also notes that he purchased the building housing the office sometime in April 2020.  (Mitarotondo Dec. Exh. 4 at 27 (notice to ZipBy dated April 30, 2020, that building had been sold to 22-23 Union Avenue LLC and Parzych was the new property manager)).

However, it is undisputed that Parzych did not yet own 22 Union Avenue at the time he was terminated.  Further, ZipBy provided him with papers stating that "[g]iven your termination of employment, your access to the ZipBy offices at 22 Union Avenue, Suite 9, Sudbury, MA 01776, and to any ZipBy personal property, Proprietary Information, and intellectual property, is hereby prohibited." (D. 6-32).  Although it is plausible that Parzych still had personal items in his office after he was ordered to leave the premises, he has cited no authority suggesting that this somehow gave him justification to enter the office once he had been terminated and denied further right of access.  Summary

35

judgment therefore should be granted in the plaintiffs' favor on Count VIII, and the defendant's motion should be denied.

    7. <u>Count IX — Conversion</u>

Count IX alleges that Parzych failed to return all ZipBy property in his possession after he was terminated and thus is liable for conversion.  To establish a claim of conversion under Massachusetts law, a plaintiff must show that the defendant intentionally and wrongfully exercised control over the plaintiff's property, that the plaintiff was damaged, and that, if the defendant legitimately gained possession under a good faith claim of right, the plaintiff's demand for the return of property was refused.  *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 95 (1st Cir. 1993).  The defendant moves for summary judgment on this claim.

Although the plaintiffs have failed to identify with specificity any information missing from the Sudbury office or from Parzych's cell phone, there are issues of material fact concerning whether Parzych wrongfully exercised control over any TCS-related information Q-Free provided to ZipBy.  While Massachusetts law does not allow conversion claims for strictly intangible property, if the "intangible property . . . is in some way merged with or contained in a physical object [it] can be converted."  *KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC*, No. 4:21-CV-10572-TSH, 2021 WL 2982866, at *16 (D. Mass. July 15,

2021).  ZipBy avers, and Parzych does not dispute, that Q-Free sent ZipBy confidential information including a four-year forecast that was supplemented to include a TCS order backlog and pipeline. (Pl. SOF ¶ 25).  Thus, at least some, if not all, of the Q-Free material was merged into physical documentation.

The defendant's motion should therefore be denied regarding Count IX.

**B. <u>The Defendant's Counterclaims</u>**

The plaintiffs seek summary judgment on all the defendant's counterclaims.  For the reasons stated below, I recommend that the plaintiffs' motion be granted on all counterclaims except for the conversion claim in Count IV.

1. <u>Count I — Tortious Interference</u>

Parzych counterclaims for tortious interference with an advantageous business relationship.  To prevail, he must show (1) the existence of a contract or business relationship that contemplated economic benefit; (2) ZipBy's knowledge of this relationship; (3) ZipBy's intentional interference with the relationship for an improper purpose or by improper means; and (4) damages. *Braintree Labs., Inc. v. Bedrock Logistics, LLC*, No. 16-cv-11936-IT, 2018 WL 4100040, at *8 (D. Mass. Aug. 28, 2018). Parzych alleges that the plaintiffs knew he was exploring repurchasing TCS and wrongfully interfered with his efforts by submitting false and misleading information to the court through

the First and Second Declarations of Karam (D. 5; 22) to obtain a preliminary injunction enjoining him from purchasing TCS.

The plaintiffs argue that the defendant has failed to adduce any evidence that they wrongfully interfered with his efforts to pursue TCS and argue further that their filing of this lawsuit and obtaining of a preliminary injunction are protected activities under the *Noerr-Pennington*[9] doctrine.  Regardless of whether the *Noerr-Pennington* doctrine applies, the court agrees that the defendant has failed to show that the plaintiffs wrongfully interfered with his efforts to purchase TCS.

As noted above, this court has concluded that Parzych breached the noncompete clause of the Employment Agreement when he pursued TCS.  As such, the plaintiffs were well within their rights to seek legal redress and their commencement of this action and request for injunctive relief did not constitute tortious interference.  The plaintiffs should be granted summary judgment on this claim.

---

[9] The *Noerr-Pennington* doctrine arose from federal antitrust litigation and provides that private entities who petition a court for redress of grievances are immune from anti-competition liability, even if they seek to restrain competition.  *See Davric Me. Corp. v. Rancourt*, 216 F.3d 143, 147 (1st Cir. 2000); *see generally United Mine Workers v. Pennington,* 381 U.S. 657, 670 (1965);  *Eastern R.R. Conference v. Noerr Motor Freight,* 365 U.S. 127, 135-38 (1961).  Some courts have extended *Noerr-Pennington* to state law tortious interference claims.  *See*, *e.g.*, *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128-29 (3d Cir. 1999).

2. <u>Count II — Breach of Contract</u>

Count II alleges breach of contract.  The Employment Agreement provides that the "[e]mployee's employment is at at-will and may be terminated by either the Company or Employee, for any reason, with or without cause, upon 90 days' written notice to the other." (Def. SOF ¶ 19).   Parzych maintains that ZipBy breached this provision by terminating him without the requisite 90-day notice. ZipBy counters that it had the right to terminate Parzych's at-will employment immediately for cause, despite the notice clause, where they had a basis to believe he was actively breaching the Employment Agreement, the IP Agreement, and his fiduciary duty to ZipBy.  They contend further that he suffered no damages from their failure to give him notice because they paid him salary and benefits as if he had worked those 90 days.

The plaintiffs cite no authority to support their contention that an employee is not entitled to notice if terminated for cause. Indeed, the Employment Agreement appears to mandate 90 days' written notice whether the employee is terminated "with or without cause."  Still, even assuming the plaintiffs failed to adhere to this provision, the defendant must show that their breach caused him harm. *Davis v. Dawson, Inc.*, 15 F. Supp. 2d 64, 128 (D. Mass. 1998).  He cannot do that on this record where it is undisputed that the plaintiffs paid him for an additional 90 days beyond his termination and even paid for vacation he would have accrued during

39

those 90 days.  The defendant also has not articulated any specific harm flowing from the failure to give him notice.  Summary judgment should therefore enter in the plaintiffs' favor on this claim.

### 3. Count III — Wrongful Termination

Count III alleges that the plaintiffs wrongfully terminated Parzych where they failed to give him adequate notice and also failed to return certain personal documents to him.  Under Massachusetts law, an at-will employee may be fired for any reason or no reason at all.  *Murray v. Warren Pumps, LLC*, 821 F.3d 77, 89 (1st Cir. 2016) ("[A]n employer may lawfully terminate a relationship with an at-will employee at any time—for any reason, for no reason, and even for a reason that might be seen by some as unwise or unkind.").  However, "courts have recognized limited exceptions to this general rule, including where the discharge is for reasons that violate clearly-established public policy." *Rodio v. R.J. Reynolds Tobacco Co.*, 416 F. Supp. 2d 224, 232-33 (D. Mass. 2006) (internal quotations omitted).  While there is no bright line between protected and non-protected actions, redress is available for employees who are terminated for asserting a legally guaranteed right, for doing what the law requires, or for refusing to do that which the law forbids.  *Id.* at 236 (citing *Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.*, 404 Mass. 145, 149-50 (1989)).  Thus, to survive a summary judgment motion on a wrongful termination claim, a plaintiff must

identify a well-defined public policy that was violated when they were terminated." *Surprise v. Innovation Group, Inc./First Notice Sys., Inc.*, 925 F. Supp. 2d 134, 148 (D. Mass. 2013) (citing *Wright v. Shriners Hosp. for Crippled Children*, 412 Mass. 469, 472-73 (1992)).

Here, Parzych fails to identify a public policy that might have been implicated by his termination and does no more than to assert that he was terminated without the required 90-day notice or the return of certain personal documents to him. As that claim amounts at best to a claim for breach of contract, the plaintiffs' motion for summary judgment on Count III should be granted.

### 4. Count IV — Conversion

Count IV alleges conversion based on the plaintiffs' alleged failure to return to Parzych some personal documents and items when he was terminated. The plaintiffs contend they returned all personal items, but the defendant alleges that ZipBy retained many personal documents, including tax and estate planning materials, Parzych's passport, and agreements pertaining to his divorce. As noted above, a plaintiff claiming conversion must show that the defendant intentionally and wrongfully exercised control over the plaintiff's property, that the plaintiff was damaged, and that, if the defendant legitimately gained possession under a good faith claim of right, the plaintiff's demand for the return of property was refused. *Evergreen Marine Corp.,* 4 F.3d at 95. Here, because

41

the parties have asserted conflicting allegations and the record does not clearly establish whether all items were returned to the defendant, summary judgment is not appropriate on this claim.

    5. <u>Counts V and VII — Requests for Declaratory Relief</u>

In Count V of his counterclaims, Parzych seeks a declaration that ZipBy is not engaged in providing parking guidance systems and that, therefore, the non-compete clause in the Employment Agreement is being applied to him unfairly and punitively. In Count VII, he seeks a declaration that ZipBy wrongfully obtained the preliminary injunction issued at the outset of the case.

As noted above, though, there is evidence in the record that ZipBy was working on implementing sensor-based parking guidance systems. Moreover, the defendant was barred from working on parking guidance systems, regardless of whether ZipBy was engaged in providing such systems, because the Employment Agreement's non-compete clause explicitly so provided. As the record demonstrates beyond any dispute that the defendant was preparing to purchase a competing business engaged in parking guidance systems, the plaintiffs unquestionably had a basis to seek injunctive relief. The plaintiffs' motion for summary judgment on Counts V and VII should thus be granted.

    6. <u>Count VI — Violation of Privacy</u>

Finally, Parzych alleges that by retaining his personal documents, the plaintiffs violated his privacy rights under M.G.L.

ch. 214, § 1B.   That statute protects against unreasonable, substantial, or serious interference with one's privacy and a plaintiff to prevail must show that there was a "(1) gathering *and* dissemination of facts of a private nature that (2) resulted in an unreasonable, substantial or serious interference with his privacy." *Branyan v. Southwest Airlines Co.*, 105 F. Supp. 3d 120, 126 (D. Mass. 2015) (emphasis added).

Here, it is unclear whether ZipBy wrongfully retained any of Parzych's personal information.   Even assuming they did, the defendant has failed to adduce any evidence that ZipBy disclosed any personal documents or information to others.   *See Carmack v. Nat'l R.R. Passenger Corp.*, 468 F. Supp. 2d 58, 80-81 (D. Mass. 2007) (interference with privacy under Massachusetts law requires both obtaining information and disclosing it).   The plaintiffs are therefore entitled to judgment on this claim.

## V.   <u>CONCLUSION AND RECOMMENDATION</u>

For the reasons set forth above, I recommend as follows regarding the plaintiffs' claims.

Regarding Count I, both parties' motions should be DENIED;

Regarding Count II, the defendant's motion should be DENIED. The plaintiffs' motion on Count II should be GRANTED with respect to their claim that the defendant breached the Employment Agreement's noncompete clause by pursuing TCS, but should be DENIED with respect to the remainder of the claim;

Regarding Counts III and IV, the defendant's motion should be GRANTED;

Regarding Counts V, VI, and VII, the defendant's motion should be DENIED;

Regarding Count VIII, the defendant's motion should be DENIED and the plaintiffs' motion should be GRANTED; and

Regarding Count IX, the defendant's motion should be DENIED.

Regarding the defendant's counterclaims, I recommend that the plaintiffs' motion for summary judgment be GRANTED as to Counts I, II, III, V, VI, and VII, and DENIED as to Count IV.[10]

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  March 29, 2022

---

[10] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).