UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZIPBY USA LLC, TMA GROUP OF COMPANIES LIMITED, and TMA CAPITAL AUSTRALIA PTY LTD, <br><br> Plaintiffs, <br><br> v. <br><br> GREGORY PARZYCH, <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * Civil Action No. 1:20-cv-10926-IT <br> * <br> * <br> * <br> * |

MEMORANDUM & ORDER

April 19, 2024

TALWANI, D.J.

Plaintiffs ZipBy USA LLC, TMA Group of Companies Limited, and TMA Capital Australia Pty Ltd. (collectively, the "ZipBy entities" or "ZipBy") brought claims against Defendant Gregory Parzych for breach of fiduciary duty (Count I), breach of contract (Count II), misappropriation of trade secrets under state and federal law (Counts III and IV), trademark infringement under state and federal law (Count V and VII), and false designation (Count VI). Following a five-day jury trial, the jury returned a verdict in favor of Plaintiffs as to all counts, awarding $1,500,000 in compensatory damages and $1,000,000 in exemplary damages. Verdict [Doc. No. 373].

Parzych brings three motions challenging the jury verdict. For the reasons set forth herein, Parzych's Motion for a New Trial on Damages [Doc. No. 391] and Motion for a New Trial Pursuant to Rule 59 [Doc. No. 390] are DENIED, and his Motion for Judgment as a Matter of Law [Doc. No. 381] is DENIED in part and GRANTED in part.

I.  **Standard of Review**

"A trial court evaluating a motion for judgment as a matter of law under Rule 50(b) must 'view the evidence in the light most flattering to the verdict and must draw all reasonable inferences therefrom in favor of the verdict.'" Rodríguez-Valentin v. Doctors' Ctr. Hosp. (Manati), Inc., 27 F.4th 14, 20 (1st Cir. 2022) (internal quotation omitted). Similarly, "when an argument that the evidence was insufficient forms the basis of a motion for new trial," the district court may "us[e] the same reasoning as in [addressing] a motion for judgment as a matter of law." Lama v. Borras, 16 F.3d 473, 477 (1st Cir. 1994).

The court may also grant a motion for a new trial where "action is required to prevent injustice." Rodríguez-Valentin, 27 F.4th at 20. Where, as here, a due process violation is claimed, the defendant must demonstrate that he was deprived of "constitutionally adequate process." See González-Droz v. González-Colón, 660 F.3d 1, 13 (1st Cir. 2011).

II. **Claimed Procedural Due Process Violation**

Parzych argues that his due process rights were violated because one of his lawyers, Michelle Blair, was required to participate in the trial remotely after she contracted COVID-19 on Day 3 of the five-day trial.

The jury was empaneled on Monday, November 27, 2023, with both Attorney Blair and Attorney Robert Dionisi representing Defendant. Opening arguments for both sides and Plaintiffs' case in chief commenced the following day. Plaintiffs' counsel began direct examination of Parzych on Wednesday, November 29, 2023. On Thursday, November 30, 2023, Attorney Blair reported that she had tested positive for COVID-19 the prior evening. The court advised the parties of the need to follow CDC guidelines and required Attorney Blair to quarantine for five days. Tr. Day 4 at 5:7-9. Attorney Blair requested to participate remotely for

her examination of Parzych. Tr. Day 4 at 5:10-12. The court explained the logistics involved in Attorney Blair's remote participation, offered "[t]he other option is we recess for five days, but I think we may lose our jury if we do," and inquired as to whether Attorney Blair was well enough to proceed remotely. Tr. Day 4 at 7. Attorney Blair responded:

> I believe I can proceed. . . . [Plaintiff's expert] was the witness today, which Mr. Dionisi was going to examine. [Defendant's witness] tomorrow, Dionisi was going to examine. I'm examining just Mr. Parzych, and then was planning on doing the closing.
>
> But, yes, I believe I can proceed, Your Honor. . . .
>
> . . . .
>
> I don't want to risk losing – losing the jury. So I think I can proceed.

Tr. Day 4 at 7. After conferring further with counsel for both sides, the court determined that the remainder of trial could proceed with Attorney Blair participating via Zoom, and Attorney Dionisi continuing to participate in person. Tr. Day 4 at 20:10-13. The court also inquired as to whether there was any objection to having Plaintiffs' direct examination of Parzych continue while Attorney Blair was making arrangements for her Zoom participation, and Attorney Blair responded that "[a]s long as Attorney Dionisi is there for objections, I do not have a problem with that." Tr. Day 4 at 9:24-10:2.

Following a break, Attorney Dionisi reported that Parzych was "very uncomfortable going forward without Attorney Blair in the courtroom." Tr. Day 4 at 17. Attorney Dionisi suggested suspending the following day and returning to the courtroom on Monday, Tr. Day 4 at 18, which would not have satisfied the five-day quarantine requirement. When Attorney Dionisi expressed concern with proceeding before Attorney Blair was connected by Zoom, the court delayed Plaintiffs' examination of Parzych until later in the day. Neither Attorney Dionisi nor Attorney Blair formally objected to proceeding with Attorney Blair participating remotely.

3

Days 4 and 5 also proceeded without objection regarding Attorney Blair's remote participation. Trial included the reading of deposition testimony, Plaintiffs' counsel's conclusion of Parzych's direct examination, Attorney Dionisi's cross-examination of Plaintiffs' expert witness and direct examination of a Defense witness (as was previously scheduled), and Attorney Blair's examination (by Zoom) of Parzych. The court permitted Attorney Blair to raise objections to the evidence and repeatedly dismissed the jury so that she could do so freely despite not being in the courtroom. Tr. Day 4 at 96:22-108:25; 178:11-25; Tr. Day 5 at 122:16-124:12. On Day 6, both sides presented closing argument, with Attorney Blair rejecting the court's offer that she conduct her closing statement in person with a mask and presenting her argument over Zoom. See Tr. Day 5 at 15:4-18.

The court finds that Parzych has waived his due process argument by failing to raise any formal objection to proceeding with trial at any time prior to this Motion. Attorney Blair herself consented on multiple occasions to the arrangement, as did Attorney Dionisi. "Counsel cannot play a waiting game and after an adverse verdict is rendered raise an objection . . . for the first time." Wildman v. Lerner Stores Corp., 771 F.2d 605, 609 (1st Cir. 1985). But even without the waiver, allowing Attorney Blair to participate in trial remotely as requested did not deprive Parzych of due process where he was ably represented by counsel throughout the trial. Parzych's request for a new trial based on a procedural due process violation is denied.

### III. Substantive Claims in Parzych's Motion for a New Trial Pursuant to Rule 59 and his Motion for Judgment as a Matter of Law

Because many of the remaining arguments in Parzych's motions overlap, the court addresses the motions together. Parzych argues that the verdict ran afoul of the corporate opportunity doctrine, the law of contract formation, and the law regarding the rights of at-will

4

employees; and that the trade secret misappropriation and trademark infringement verdicts were against the great weight of the evidence.

A reasonable jury could find the following facts from the evidence at trial. While Parzych was the President of ZipBy USA, he was contacted by the managing director of Q-Free (the company that owned Parzych's former company, TCS International ("TCS")) and asked if ZipBy would be interested in acquiring TCS. Parzych informed ZipBy's CEO, Anthony Karam, about the offer. Karam then asked Parzych about the advisability of ZipBy acquiring TCS. After initially expressing enthusiasm over the deal, Parzych advised Karam not to acquire TCS because, among other reasons, TCS's parent company was misrepresenting the financial information such that the deal appeared better than it was. After leading Karam to believe the deal was no good, and while still employed by ZipBy, Parzych attempted to acquire the company on his own, without discussing the purchase with Karam or ZipBy's board.

While he was President of ZipBy USA, Parzych also secretly purchased the office building where ZipBy USA was based and then renegotiated ZipBy USA's lease without disclosing to ZipBy that he was now ZipBy USA's landlord.

After being fired by ZipBy, Parzych reached out to others in the parking industry and indicated that TCS was offering parking technology solutions. These parking technology solutions were highly similar in description to projects in development at ZipBy to which Parzych had had access.[1] Parzych also used ZipBy's logo on his personal webpage, MJP Global, and continued to do so after being fired.

---

[1] Parzych signed several of these emails as "President of TCS," although at trial he testified that he was not TCS's President and that his email signature was a typo.

    A.    *Breach of Fiduciary Duty*

Parzych argues in both motions that the court misrepresented the governing legal standard regarding the duties of an employee to his employer.

First, Parzych argues that he was permitted to pursue the TCS opportunity under the corporate opportunity doctrine and that the jury was misled into believing that an employee may *never* pursue an opportunity even if his employer has rejected that opportunity. "[T]he corporate opportunity doctrine is best seen as a rule of disclosure obligating the fiduciary to disclose all material facts to the corporation so that the corporation can make an informed decision on the opportunity." Report and Recommendation at 19 [Doc. No. 257] (citing In re Cumberland Farms, Inc., 284 F.3d 216, 228 (1st Cir. 2002)) (emphases added), adopted as to this issue by the court, see Clerk's Notes [Doc. No. 293]. The jury was presented with substantial evidence that Parzych presented intentionally misleading and incomplete information about TCS to Karam and could reasonably have concluded that ZipBy did not have the requisite knowledge to make a fully informed decision not to pursue the opportunity on its own.

Relatedly, Parzych's assertion that a new trial is warranted based on ZipBy's counsel's references to Parzych's secretive conduct during closing arguments is unavailing. The jury was properly instructed that opening and closing arguments were not evidence. See Tr. Day 6 at 19:20-25; 77:17-21. Considering that curative instruction, as well as "the context in which [the statement] occurred" and "the strength of the evidence against the defendant," the court finds that references to secretive conduct in opening and closing arguments cannot serve as the basis for a new trial, particularly where the jury could properly infer that secretive conduct was indeed indicative of bad faith. See United States v. Robinson, 473 F.3d 387, 398 (1st Cir. 2007).

Second, Parzych argues that the court erred in refusing to instruct the jury that at-will employees are free to pursue other opportunities while employed at their current positions. As the court explained during the charge conference, Parzych was not "merely" an at-will employee: He was bound by his general fiduciary duty to ZipBy as President of the company and bound further by contracts including a noncompete agreement and his employment agreement. Tr. Day 4 at 187:9-15; Ex. 1 (employment agreement); Ex. 3 (NDA and IP agreement). Because these agreements and duties supersede the general rules governing at-will employment arrangements, the court declined to introduce a jury instruction about at-will employment that ignored these other legal obligations. Moreover, the evidence was more than sufficient for the jury to find that Parzych was doing more than simply looking for another job opportunity while still employed by ZipBy: It is disingenuous to compare an employee searching for a new position during his lunch break to Parzych's covert attempts to acquire a valuable asset behind his employer's back. Parzych's argument otherwise ignores the facts and the law at issue in this case. For these reasons, Parzych's motions are denied as to his fiduciary duty argument (Count I).

      B.     *Breach of Contract*

Parzych challenges the verdict as to the breach of contract claims. The jury's conclusion that Parzych was in breach of the Employee Handbook is supported by sufficient evidence. First, a jury could reasonably have concluded that ZipBy's Employee Handbook was enforceable as to Parzych, where Anthony Karam testified that Parzych was given a raise in exchange for signing the Employee Handbook, see Tr. Day 2 at 145:15-25. Second, the jury could reasonably have concluded that Parzych took actions in violation of the Handbook, where the Handbook required Parzych to devote his time and energy to ZipBy and to refrain from misusing company property, see Ex. 2A. Regardless, the damages associated with the various breaches of contract claims are

overlapping in that they arose from the same unlawful conduct and resulted in the same lost opportunity to ZipBy such that any error associated with the jury's conclusions on the Handbook issue would not have altered the final judgment award. Parzych's motions are denied as to the breach of contract claim (Count II).

      C.    *Trademark Infringement*

Parzych also challenges the jury's verdict on trademark infringement. "[P]roof of actual confusion is not essential to finding likelihood of confusion" in a trademark infringement claim. Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 25 (1st Cir. 2008) (internal quotation marks and citation omitted). Rather, ZipBy was required to demonstrate that "the allegedly infringing conduct [] create[d] 'a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.'" See id. at 12 (internal citation omitted). ZipBy provided evidence that Parzych used ZipBy's logo and photos of company products on his personal website, and that he used the website to advertise his capabilities as an expert and leader in the parking industry. ZipBy also provided evidence that Parzych maintained this website, as well as the photos and references to ZipBy products, after he was terminated from ZipBy's employment. A jury could reasonably have concluded that this conduct was likely to cause consumer confusion as to whether Parzych was "the producer of the successful brand." See id. at 12. Parzych's motions are denied as to the trademark infringement and false designation claims (Counts V, VI, and VII).

      D.    *Trade Secrets Misappropriation*

Parzych also challenges the jury verdict as to trade secret misappropriation. "The standard for misappropriation under the [Defend Trade Secrets Act] is substantially similar to that under Massachusetts law." Viken Detection Corp. v. Videray Tech. Inc., 384 F. Supp. 3d

8

168, 177 (D. Mass. 2019). "To prevail on a claim for misappropriation of trade secrets under Massachusetts law," a plaintiff must establish three things: "1) the information at issue constitutes a trade secret, 2) the plaintiff took reasonable measures to secure the confidentiality of the information, and 3) the defendant obtained the trade secret through improper means." Id. (citing Optos, Inc. v. Topcon Med. Systems, Inc., 777 F. Supp. 2d 217, 238 (D. Mass. 2011)); see also M.G.L. c. 93, § 42(4) (defining "trade secret"). The DTSA defines "trade secret" as information that (A) the owner thereof has taken reasonable measures to keep secret; and (B) derives independent economic value from not being known to, and not being readily ascertainable through proper means by, another person who could derive economic value from the information's disclosure or use. 18 U.S.C. § 1839(3); see Allstate Ins. Co. v. Fougere, 79 F.4th 172, 188 (1st Cir. 2023). Similarly, under Massachusetts law, "[a] trade secret is any confidential information used in the plaintiff's business that 'gives [the owner] an advantage over competitors who do not know or use it.'" Viken Detection Corp., 384 F. Supp. 3d at 177 (quoting J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 736 (1970)). Matters of public knowledge or information generally known in an industry are not protectable trade secrets. Id.

ZipBy contends that Parzych misappropriated two trade secrets: (1) the financial information sent by Q-Free regarding the potential TCS acquisition; and (2) the minutes of the board meeting in which ZipBy decided not to proceed with the TCS acquisition. The court finds that the evidence does not support a verdict in favor of ZipBy on these claims.

1. Board Meeting Minutes

The evidence before the jury was not sufficient to support Plaintiffs' conclusion that Parzych improperly obtained the meeting minutes' contents.[2] Anthony Karam, ZipBy's CEO, testified that he had a phone call with Parzych several days before the board meeting at issue. Tr. Day 3 at 24:2-5. During that phone call, Parzych informed Karam about several purported discrepancies between the financial information Q-Free had provided and the "insider" information Parzych had acquired from a friend still employed at TCS. Tr. Day 3 at 27-28. Parzych then recommended that ZipBy not proceed with the acquisition, and Karam testified that he "accepted his recommendation after what we had discussed." Tr. Day 3 at 30:17-19. Similarly, Parzych testified that during that same phone call, Karam communicated his lack of interest in the TCS deal. Tr. Day 5 at 81:18-20.

The evidence before the jury also was not sufficient to support a conclusion that Parzych improperly disclosed the meeting minutes' contents where Parzych was authorized to communicate with Q-Free on behalf of ZipBy regarding the TCS deal and ZipBy put forward no evidence of Parzych discussing ZipBy's decision with any other entity. Karam testified that Parzych was the main point of contact between Q-Free and ZipBy regarding the potential TCS deal. Q-Free first contacted Parzych, not Karam, about the potential deal, see Tr. Day 2 at 150:24 (discussing call), Karam assigned Parzych as the point man to investigate the details of the deal, see Tr. Day 2 at 152:21-25 ("[T]here was no one better to understand and look at the business

---

[2] ZipBy failed to introduce evidence that Parzych ever had access to the board meeting minutes themselves. Nevertheless, ZipBy contends that it is the company decision not to acquire TCS that was embodied in the minutes, not the physical minutes themselves, that constituted a trade secret. Because the court's decision does not turn on this distinction, the court need not address it further, and assumes for the purposes of the issue that the decision not to acquire TCS qualifies as a trade secret.

10

than Greg. I couldn't even look at it as good as Greg could look at it."), and Parzych received and handled the follow-up communication from Q-Free regarding the deal, see Ex. 170 (emails from Morten Andersson to Parzych regarding financials). The evidence demonstrates that any disclosure Parzych may have made to Q-Free about ZipBy's disinterest in the deal was therefore properly within the scope of his employment at the time.

ZipBy argues that Parzych's relaying to TCS that ZipBy was not interested in the deal was used for improper purposes, namely, to try to acquire TCS himself. But while this conduct supports ZipBy's other claims, as set forth in this decision, this motivation does not convert the actions here to a misappropriation of trade secrets claim.

    2.    Q-Free Financial Information

The record also does not support ZipBy's claim that the Q-Free/TCS financial information Andersson sent to Parzych was owned by ZipBy and therefore constituted ZipBy's, rather than Q-Free's, trade secret. Karam testified that Q-Free and ZipBy had a standing proprietary information agreement and NDA but did not specify the information covered by those documents, or what kinds of rights those documents gave ZipBy in information and/or data generated by Q-Free. Tr. Day 2 at 127:9-20. ZipBy did not introduce the NDA or proprietary agreement into evidence. Karam also testified that the reason business information from collaborators was generally kept confidential was because "as a company, if you don't keep information confidential, you damage your company, and you damage your brand"—not because the documents or information were themselves independently valuable. Tr. Day 2 at 127:22-24; cf. 18 U.S.C. § 1839(3)(B) (specifying "independent economic value" as requirement of trade secret). Karam did not testify that ZipBy generally considered the business information of its collaborators or partners ZipBy's own "trade secrets," and when directly asked to list examples

of ZipBy's trade secrets or proprietary information that Parzych had access to, Karam did not describe anything resembling the financial information at issue. See Tr. Day 2 at 98:5-17.

The record also does not support ZipBy's claim that Q-Free intended to keep its financial information confidential. While Andersson initially emailed the financial documents to Parzych as ZipBy's representative, Andersson's emails did not include any specific requests to keep the attached financial documents confidential. Moreover, evidence from both Parzych and ZipBy showed that Parzych was in regular communication with executives at both TCS and Q-Free and could easily have obtained duplicate (or additional) financial documents independently of the emails he received from Andersson at his ZipBy email address.

Parzych's motions are granted as to the trade secret misappropriation claims (Counts III and IV).[3]

## IV.     Motion for New Trial on Damages

ZipBy's expert, William Scally, testified that the lost profits to ZipBy of not acquiring TCS in June of 2020 ranged from $1.5 million to $2.4 million. In his Motion for a New Trial on Damages, Parzych contends that Scally relied on insufficient and misleading evidence in reaching his damages calculation and that he failed to properly consider relevant evidence, including the effects of COVID-19 on the value of the TCS acquisition. Scally offered testimony on the lost profit to ZipBy based on the inability to acquire TCS in June 2020. Scally is a partner at Marcum LLP, a financial advisory firm, and reviewed the "documents and facts that were

---

[3] Because the court finds that the weight of the evidence does not support a verdict in favor of ZipBy on the trade secrets claims, the jury's award of $1 million in exemplary damages will be reversed. However, where the evidence as to damages from Parzych's breach of contract and breach of fiduciary duty are entirely contiguous with any damages from the alleged trade secrets misappropriation, the court need not disturb the jury's verdict as to the compensatory damages amount.

disclosed within this case," including TCS's financial statements, customer profitability data, accounts payable and receivable, and historical performance data, in preparing his damages calculation for this trial. Scally relied on that information to calculate damages using a comparison of TCS's expected earnings to its present value, which he explained is referred to as an "income approach" by financial experts. Tr. Day 4 at 139. Scally's expert testimony was based on "sufficient facts [and] data," used "reliable principles and methods," see Crowe v. Marchand, 506 F.3d 13, 17 (1st Cir. 2007), and employed the "intellectual rigor that characterizes the practice of an expert in the relevant field," see Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999). See Tr. Day 4 117:22-25; 126:17-127:6 (describing methodology and qualifications). Scally testified that as of March 2021, ZipBy's lost profits associated with the unrealized TCS acquisition were $1.53 million; Scally further projected that, based on the interest rates in 2021, 2022, and 2023, that value would have reached $2.4 million as of the date of trial. The jury awarded compensatory damages in the amount of $1.5 million.

Parzych nevertheless disputes Scally's calculation, contending that Scally ignored important evidence, including the effect of the COVID-19 pandemic on the value of TCS, TCS's tax returns, and David Radford's testimony about TCS's losses in 2020, 2021, and 2022. However, (1) Scally expressly considered reputable industry sources in conducting his analysis, and those sources considered the impact of the COVID-19 pandemic on profitability, see Tr. Day 4 at 34:1-35:9 (discussing use of IBISWorld 2020 report); (2) Scally was not required to conduct an audit or analyze tax returns in the course of reaching his expert opinion, see Coy v. Simpson Marine Safety Equipment, Inc., 787 F.2d 19, 27 (1st Cir. 1986); see also Tr. Day 4 at 164:16-19 (explaining that an audit would only be relevant if "there were fraud in the financial statements or an expectation of fraud"); and, in any case, (3) the jury could reasonably have discredited or

13

given limited weight to David Radford's testimony where the evidence indicated that Radford was Parzych's close friend who had worked with Parzych to acquire TCS in the first instance, and where Radford's individual business management strategies from 2021 through 2023 were not relevant to an objective valuation of the company. The court additionally notes that Radford testified TCS earned $1.3 million in revenue in 2021 and $1.6 million in revenue in 2022, see Tr. Day 5 at 150:19-21, 154:4; in light of these figures, it is entirely possible that the jury *did* consider Radford's testimony in reaching its figure of $1.5 million in damages. In sum, the jury's award of $1.5 million in compensatory damages was not against the great weight of the evidence. Parzych's Motion for a New Trial on Damages is denied.

## V. Conclusion

For the foregoing reasons, Parzych's Motion for Judgment as a Matter of Law is GRANTED as to the trade secret misappropriation claims (Counts III and IV) and DENIED as to all other claims, and Parzych's Motion for a New Trial Pursuant to Rule 59 and Motion for a New Trial on Damages are DENIED.

IT IS SO ORDERED

April 19, 2024                                                    /s/    Indira Talwani
                                                                  United States District Judge